UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA
(RESPONDENT)

V.

CASE NO. 13-0083-6
(WMS)(HBS)

JOSE RIVERA
(Petitioner)

JOSE RIVERA'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE UNDER 18 USC §3582(c)(1)(A)

Submitted BY:

JOSE RIVERA, PRO SE
FED No.#22416-055
L.S.C.I. Allenwood-Low
P.O. Box 1000
WHITE DEER, PA 17887

## Factual Background

Petitioner has filed a seperate 2255(h)(1)(2) motion seeking a sentence reduction based on new case laws pertaining to the Count 1 in violation of 21 U.S.C. 846, 841 (a)(1) and (b)(1)(A) Conspiracy to Posses with Intent to Distribute 1 kilogram or more of heroin, as well as a reduction of Supervised Release Pursuant to the FIRST STEP ACT of 2018, According to new case laws under the Change in language concerning relevant or Actual conduct, Petitioner could not have plead to the charge listed above, and thus his conviction must now be vacated as a matter of new law. Period!

Petitioner is currently scheduled to be Released from Prison January 2023.

## Medical (Health) History

Mr. Rivera has exhausted all his Remedies Required by the BOP and the CARES ACT (as well as, Congress passed FIRST STEP ACT of 2018). Mr. Rivera suffers from High Blood Pressure; Mellicious Diabetes, High Cholesterol and Alike. All of these conditions are listed by the CDC's office of illnesses the BOP and Court's (Judge's) are to be considered for safety valve Relief due to the deadly Covid-19 virus outbreak. Given the severity of the virus pandemic and the sudden loss of lives within the BOP, Court's have moved to Release those across the Country to avoid awful consequences. Such is the CASE Recently in (U.S. v. Echevarria, No. 3:06-CR-269 (MPS), 2020 WL 2113604 (D.Conn. May 4, 2020) Granting compassionate Release to the Defendant At FCI Allenwood suffering from Bronchial Asthma, despite and Absence of Reported cases there. Similar other cases also does apply such as; (U.S. v. Wilson, No 2:11-CR-180, April 29, 2020 4th Cir (EDVA).

And (U.S. v. Kelly) At Oakdale (Southern Dist of Mississippi, who was Release without any underlying health issues. (see https://www.gordondefense.com/southern-district-of-mississippi-makes-important-covid-19-3582-ruling-united-states-vs-kelly/.

## PRELIMINARY STATEMENT

Federal Inmate Jose Rivera    (Fed # 22416-055), through this Pro Se Petition, files this emergency motion, under 18 U.S.C. § 3582 (c)(i)(A), for an order granting Petitioner "Compassionate Release" and directing him to serve the Remainder of his Prison Sentence in home Confinement with Electroic monitoring and with Permission to work with Permission of Probation.

Mr. Rivera    was sentenced to (120) months confinement, (5) years supervised release. He has served (72) months of his sentence, with approximately (48) months Remaining. Given the Recent Pandemic, the High Risk of Infection within Federal Prisons, the inability to stop the spread of the virus within the inmate Population as evidenced by the Rapid increase in Fected inmates and inmate deaths, and Petitioner's susceptibility to infection due to his HIGH Blood Pressure it is likely that he will soon be exposed to the virus and become critically ill or die.

## Exhausted Remedies

Petitioner has recently exhausted all his Remedies Required by the BOP and newly Passed (by Congress) First Step Act of 2018 and the CARES Act. (See Attachment #1, the denial issued by Warden "White" of Allenwood-Low). Petitioner suffers from since childhood (See his PSR Report), that causes severe bouts of sneezing/coughing and shortening of Breath. This Condition is listed on the CDC's list of illnesses that the BOP and Court's (Judge's) are to consider for life saving Relief due to the Covid-19 virus out Break.

COVID-19 PANDEMIC IS DEADLY

Covid-19 is REFERRED to AS A "NOVEL CORONA VIRUS" BECAUSE it is NEW, AND AS A NEW illNESS it is NOT LONG-STUDIED OR well UNDERSTOOD; AND hAS quickly become UNPRECEDENTED iN OUR LifETiME. IN FACT, ANY PRETENTION OUR NATION hAS thAT WE KNOW OR UNDERSTAND whAT will hAPPENED NEXT, is belied by the events of the last few weeks. FOR example, the CDC itself hAS CHANGED its RecommendATions to include weARiNG A FACE MASK, AND PREDictions of how long iNDividuAls NEED to stAy At home to "FLATTEN the CURVE" hAVE EVOLVED, At times, oN AN houRly bASiS. It is with this UNPRECEDENTEDLY DEADLY, DISRUPTIVE, UNKNOWN AND UNPREDICTABLE VIRUS AS A BACKDROP thAT I implore this CouRt to GRANT COMPASSIONATE RELEASE to Petitioner.

The CombiNATioN of FACTS AND CiRcumstANces outlined HERE Comprised MOST RESPECTFully, "EXTRAORDINARY AND COMPELLING REASONS" FOR ALLOWiNG Petitioner to SERVE the RemAiNER of his PRISoN sentence iN home CoNfiNEMENT. (SEE 18. U.S.C. § 3582(c)(1)(A)(i).

## COMPASSIONATE RELEASE STATUTE

THE [SENTENCING] COuRT MAY NOT mOdify A teRM of ImPRISONMENT ONCE it hAS been imposed ~~except that~~ —

(1) iN ANY CASE
   (A) the CouRt, UPON mOtion of the DIRECTOR of the BOP; OR UPON MOTION of the DEFENDANT AFTER hE hAS Fully exhAuSTED All ADMINISTRATIVE RiGHTS to APPEAl A FAiluRE of the BOP to bRING A MOTION ON the DEFENDANT'S behAlf OR the lAPSE of 30 DAYS FROM RECEIPT of such A Request by the wARDEN of the DEFENDANT'S FACIliTY, whichevER is eARliER, MAY REDUCE the term of IMPRISONMENT (AND MAY impoSE A teRM of PRObATION OR SupeRVISE RELEASE with OR without CONDITIONS thAT does NOT EXCEED the UNSERVED PORTION of the ORIGINAL teRM of IMPRISONMENT), AFTER CONSIDERING the FACTORS set foRth iN Section 3553(A) to the extent ~~thAT~~ they ARE APPliCABLE, iF it FiNDS thAT —
   (i) extRAORDiNARY AND COMPElliNG REASONS wARRANT such A REDUCTION... AND thAT such A REDUCTION is CoNsistent with APPliCABLE Policy stAtemeNTS ISSUED by the SenteNciNG Commission.

THE BOP Complete Failings

A VAST MAJORITY of Court's have Rejected the BOP's claims that a defendant's failure to "SUGGEST A life-threatening condition to support a claim that [§ 3582(c)(1)(A)'s] exhaustion requirements may be excused during this National [Coronavirus] Emergency"). (See U.S. v. Sloane, No. 19-CR-10117 (D. Mass.), ECF Doc. 647 (Mar. 19, 2020, Order).

The spread of the Coronavirus has been Exponential in the United States in the Past Few weeks, surpassing 50,000 deaths, with more then 1,112 Residents of Pennsylvania (as of April 19, 2020) having Died needlessly. Although the BOP has taken some measures to Prevent and Control the spread of Covid-19 Amongst the Prison Population, those measures have been completely inadequate to Protect Prisoners from Contracting the virus. Inmates live in "Close living quarters" and thus "Are especially vulnerable to Covid-19 and will need Special Attention both to minimize transmission Risk and Address their Healthcare needs in the context of an outbreak". (See https://www.bop.gov/coronavirus/.) The Risk to Inmates is significantly higher than the Risk to the General Public Due to the living quarters and the inability to Control Spread within those living quarters. Prisoners "Also may not be Able to Regularly wash their hands, which may Promote the spread of Disease". (See 19_letter_from_public_health_and_legal_experts.pdf.)

The facts are undisputed that Petitioner is currently Residing in his dorm At Allenwood Low in a 12'x 12' cubicle with at least two other People. Sleeping spaces within that cubicle are seperated by only A Few Feet. Approximately two Hundred (Plus) men Are Sharing Five to Six Functioning toilets. Access to cleaning supplies is limited, thus these Circumstances do not Permit For Proper social distancing or Proper hand washing. Even the computer and Phone stations Are within one Foot of one Another and within six Feet of one Another as they wait in line for their turn to use the Computer or Phone.
(See https://www.usatoday.com/story/news/Politics/2020/03/26/jails-free-hundreds-prisoners-stop-coronavirus/5077204002/.

(Note:) Petitioner has been Forced to hand write this motion because the BOP Staff has Refused to Provide typewritters to the Inmates!

Whatever precautions the BOP has or will have in place, it is inevitable that every inmate at Allenwood Low will come into close contact with BOP staff, other inmates, and surfaces/objects touched by BOP staff and other inmates. Allowing Petitioner to serve the Remainer of his Prison sentence in Home Confinement, where he will isolate himself, in case he has been exposed, while following all CDC Recommendations for social distancing, covering faces and hand hygiene will reduce the risk he becomes infected with Covid-19 and increase the chances that he can contribute to a treatment by not getting sick.

Courts around the Country are heeding the Attorney General's advice and releasing Inmates based on this public health crisis of the Covid-19 pandemic. (See Xochihua V. Barr, No. 18-71460 (9th Cir Mar. 23, 2020). The Court found (ruled) Despite the fact that an Inmate may not be in a high-risk category for death from Covid-19 as per the CDC Guidelines, Covid-19 has claimed the Lives of People from every age and health category. From mild cases that do not require hospitalization to strokes; even the CDC Guidelines of social distancing, isolation and hand washing have proven insufficient and vastly is simply not possible in a Prison environment no matter what steps the BOP takes because at Allenwood Low and many other facilities, too many people are living in too close proximity to one another to be able to prevent the Infestation of the Facility by the Virus. (See U.S. V. Copeland, No. 2:05-CR-135-DCN (D.S.C. Mar. 24, 2020).

Simply put, Petitioner faces possible, even likely infection, and potential death in Prison due to his underlying severe health issues.[1] Petitioner's illnesses cause sneezing, coughing and itchy eyes (Just to name a few here); which results in more frequent contact between hands and face, which increases contact between hand and face opportunities for the Virus to infiltrate Your body and cause illnesses). This Risk can be mitigated by Release to strick Home Confinement and better Isolation (at Home).

Footnote: (1)   Petitioner's health issues consist of the following:
SEE PAGE 2 FOR List of health issues

These ARE Compelling AND Exceptional Circumstances. As Petitioner sits in Prison Fearing the moment the Pandemic infiltrates the Prison AND face a unnecessary Risk of a severe deadly illness as a Part of his consequence/Punishment is disproportionate to his crimes, especially Given the Nature AND (newly Formulated) characteristics of the offense.

Finally [In Sum]; As Reported by the CDC, inmates Face A high-Risk of Contracting the virus. (See https://www.cdc.gov/coronavirus/2019-ncov, community/correction-detention/FAq.html.) Accordingly, medical treatment capacity is not at the same level in a correctional setting as it is in a hospital. Reports have also shown that the BOP has not even been observing the CDC's Recommendations on the Coronavirus. (See https://www.the marshall Project.org/2020/04/03/Federal-Prisons-AGENCY-Put-staff-in-harm-s-way-of-Coronavirus.

Allowing Petitioner to serve the remainder of his Prison sentence in home Confinement, where he will isolate himself, will best ensure that he will not get infected with the Coronavirus. (See U.S. V. Resnick, No. 14-CR-810, 2020 WL 1651508, At 8 (S.D.N.Y. Apr. 2 2020); where the Court found that, [Mr. Resnick's] environment [At Home] will be significantly better then the BOP facility, where despite the Prison walls, AND where Access to PPE for inmates is essentially non-existent"

## III. Emergency Relief Requested

Because recently, Allenwood-Low have begun recieving inmates from other institutions that had the Covid-19 virus. Accordingly, other inmates at Allenwood has begun to be released with the same medical issues to avoid being terminally affected.

I believe that my life is in danger to the point it would affect my health to death as I run the extreme risk of failure of health that the Covid-19 virus would fatally affect my heart and lungs, that will easily trigger a respiratory failure due to my failing health.

Petitioner has been on quarintine for more then the required (14) days (and counting) at the Allenwood-Low facility, due to the fact officer's have contracted the virus; and for the supposed protection of safety; however, just recently the officer's here has began suing the BOP for lack of safety material's and claim that their health and safety is in serious and critical danger and now guards are refusing to come to work as a life saving measures for themselves. (2)

This behavior leaves everyone here at this institution to conclude that its only a matter of time before the virus reaches deaths door for the elderly and most vulnerable such as myself and other's that has just be granted release. Of note; two of the few individual's had violent crimes such as arsen and Rico conspiracy; and yet due to the conditions and avoidance to disclose the true issues here at Allenwood-Low, Court's have correctly erred on the side of caution and granted immediate release to home confinement with no (14) day holds to be certain those who did not recieve life sentences; don't die in prison due to the Covid-19-virus and the complete lack of care and proper administrative oversight by the BOP staffer's and such (AG) Barr has actively issued a task force to expedite relief for inmates such as myself.

Footnote (2): (see https://www.pennlive.com/coronavirus/2020/03/one-of-32-federal-inmates-transferred-to-allenwood-complex-tested-for coronavirus.html.)

## The §3553(A) Factors Favor Compassionate Release

There is little to no likelihood that Petitioner will commit another crime, especially if he will be in home confinement and subject to GPS monitoring and supervised release. (see 18 U.S.C. §3553(A)(2)(B)-(C). Granting Petitioner compassionate release based on the Coronavirus Pandemic, as he still faces serious consequences. Accordingly, Petitioner has program extremely well while showing to be a leader when mentoring other inmates by his hard work attitude and his willingness to share with all that would listen about how much he has changed.

Of great legal consequences, that this court should also consider, recently in (U.S. v. McPherson, No. CR-94-5708, WD Wash. April 14, 2020 (RJB), the court found the defendant was sentenced beyond what is now deemed a fair (or unfair) penalty by new laws, and he has already served years of that now clearly unfair sentence. The court concluded (similar to Petitioner's 2255(h)(1)(2) filing) it is extraordinary that a civilized society can allow this to happen to someone who, by all accounts, has long since learned his lesson. Therefore; for the reasons stated above herein, the defendant's motion should be granted here and across the country and defendant must be released immediately in the interest of justice. Petitioner prays for such relief as those listed throughout Petitioner's motion for relief.

<u>Conclusion</u>

WHEREFORE, Petitioner; JOSE RIVERA, Pro se, (handwritten motion - Due to lack of access to a typewriter) humbly Request that this Court PLEASE <u>GRANT</u> this motion For <u>immediate Release for</u> <u>Home Confinement</u> DUE to the COVID -19 DEADLY virus AND my failing (Pancreatic Cancer diagnois) health issues; Pursuant to the CARES Act under § 3582 (a)(1) (AND Alike); AND ORDER AN immediate Release From Custody (as Petitioner's family has Secured Residential housing) AND Allow Petitioner Extended home Confinement to Allow Petitioner to Protect AND Recieve Proper treatment (medical) at home, AND to Avoid him From Dying in PRISON; AND For such other AND Further Relief deemed Proper AND necessary in the INTEREST of Justice.

Respectfully Submitted,

DATED: 06-08 , 2020

JOSE RIVERA, Pro se
Fed No. 22416-055
LSCI Allenwood - Low
P.O. Box 1000
White Deer, PA 17887

(10)

## AFFIDAVIT

I Hereby Certify that the foregoing facts are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 USC Section 1746.

JOSE RIVERA, Pro Se

## CERTIFICATE OF SERVICE

I Hereby Certify that a copy of the foregoing Petition/Motion was mailed on this _08_ day of _JUNE_ , 2020, by First Class Mail, postage prepaid to:

Office of the US Attorney

JAMES P. KENNEDY, JR Avei XIANG

138 DELAWARE AVE

BUFFAlO , N.Y. 14202

JOSE RIVERA, pro se

(I)

ATTACHMENT(S)

CORONAVIRUS TSUNAMI THREATENS PRISON SYSTEM

A week ago, the US had 3,500 confirmed COVID-19 cases, with 40 deaths. A scant seven days later, those numbers have increased by an order of magnitude: the nation has just passed 33,000 confirmed cases   including several members of Congress  and 413 deaths. And although some local and state governments are releasing thousands of inmates in order to prevent a coronavirus outbreak in crowded jails and prisons, there is no federal move to do so.

As of late last night, the Wall Street Journal reported, the Bureau of Prisons had confirmed three staff and three inmate cases. One of the BOP staff members who is presumed positive worked at a New Hampshire facility and may have been in contact with inmates, a BOP official told CBS News.

But despite inmate rumors to the contrary, the BOP is not using its furlough power, RRC placement, Elderly Offender Home Detention program, or power to recommend compassionate release to speed the release of vulnerable inmates.

Last week, the ACLU called on Attorney General William Barr to "immediately seek sentences consistent with retroactive application of provisions of the First Step Act, including the 851 enhancement, safety valve, and 924(c) "stacking" provisions." The ACLU demanded that BOP increase use of compassionate release for those over 65, have a medical condition; or who suffer from diseases making them vulnerable to the COVID-19 disease, and people within a year of release.

On Thursday, the Federal Public & Community Defenders asked DOJ to direct the BOP to grant the maximum amount of home confinement and to expand its reasons for recommending compassionate release to include risks of coronavirus to "identified persons over the age of 60, as well as persons with diabetes, respiratory problems, and compromised immune systems as facing special danger from COVID-19."

Inmate rumors that the BOP will release minimum security inmates were stoked by reports of a petition posted at the website change.org, demanding that President Trump order all BOP campers be sent to home confinement for the duration of the COVID-19 emergency. As of late Sunday, the petition had over 37,000 signatures. The odds this petition will have any effect whatsoever are zero.

Inmates face substantial risks due to the tight spaces in crowded conditions and strained health-care systems, according to experts. An opinion column in The New York Times last week warned that prisons and jails would be "the epicenter of the pandemic" unless action was taken. A similar column in The Washington Post warned, "Unless government officials act now, the novel coronavirus will spread rapidly in our jails and prisons, endangering not only prisoners and corrections workers but the general public as well."

"We're all headed for some dire consequences," The Wall Street Journal quoted Daniel Vasquez, a former California warden, as saying. "I think it's going to be impossible to stop it from spreading."

CBS News reported Thursday that BOP employees say their lives are in danger after bungled instructions and widespread supply shortages. "The agency is in chaos," CBS quoted Joe Rojas, regional vice president of a correctional officer labor union, as saying. "We are just scrambling to get things in order." At a Florida FCI, BOP staffers told CBS News that officers transferring inmates lack access to protective gear, soap, and hand sanitizer. Gloves are in short supply, and workers plan to reuse disposable masks.

"Our supply is very limited," Kristan Morgan, vice president of an officers' union, told CBS. "It's kind of like survival of the fittest at this point." She said she spent Tuesday afternoon admitting a busload of 12 new inmates, all of whom had high fevers. The facility's doctor is out sick, and their two nurses and one nurse practitioner are working around the clock. BOP staff have started to call in sick in order to avoid exposure. "They feel really betrayed," said union president Ray Coleman said.

The Bureau of Prisons has identified nine criteria for which you must meet to be considered for home confinement due to Covid-19, if you have underlying medical conditions identified by the CDC. This criteria has been developed based off of the AG Memo and the Cares Act, you must meet all of the below listed criteria;

1) Primary Offense is not violent;

2) Primary Offense is not sex offense;

3) Primary Offense is not terrorism;

4) No detainer;

5) Mental Health Care Level is less than IV

6) PATTERN risk score is MIN

7) BRAVO score is LOW or MIN

8) Served at least 50% of their sentence

9) No Incident Reports in the past 12 months

Your current PATTERN risk scores is Medium, therefore you do not meet the criteria.


> > >  ~^!"RIVERA, ~^!JOSE" <22416055@inmatemessage.com> 4/9/2020 10:52 AM > > >
To: WARDEN
Inmate Work Assignment: UNICOR

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
a0f0458f-e0be-40b9-b690-0522c55bc23b
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


DEAR WARDEN,
I WOULD LIKE TO HAVE MY CASE REVIEW BY THE CARE ACT. I BEEN SICK FOR OVER 18 YRS WITH MY SICKMESSES:
(1)DIABETES MELLITUS: EXCESS SUGAR IN THE BLOOD STREAM AN URINE WITCH RESULTS IN A FAILURE TO METABOLIZE SUGARS WITCH MEANS I HAVE A BAD PENCREAS.I HAVE A HIGH A1C, OF A SCALE OF 1-13 I'M AT THE HIGHEST 13, NORMAL IS 6, FOR SOME REASON MINES WONT GO DOWN, SO MY KIDNEYS ARE AT RISK ALSO MY HEART, MY EYES AND ALL MY ORGANS BECAUSE
MY DEFENSES ARE VERY LO.
(2)HIGH BLOOD PRESSURE.
(3)HIGH CHOLESTEROL.
I WOULD BE IN JEOPARDY BY THE THREAT OF THE NEW CORONA VIRUS AND MY CHANCES TO SURVIVE ARE

*Attach #1*

MINIMUN. I KNOW THERE ARE NO PREVISIONS IN THE LAW FOR THE NEW THREAT AND ALL LIES ON THE DISCRETION OF THE WARDEN, SO I HUMBLY ASK THIS ADMINISTRATION TO EVALUATE AND CONSIDER MY CASE FOR HOME CONFINEMENT AND ANY OTHER WAY THAT I CAN BE SAFE. I HAVE MORE THAN HALF OF MY SENTENCE SAFE. I BEEN PROGRAMMING AND WORKING IN UNICOR FOR OVER A YEAR, I'VE ACHIVED MY G.E.D AND IN 6 YRS NEVER HAD ANY KIND OF INCIDENT REPORTS. THANK YOU FOR YOU'RE TIME .

SINCERELY,

JOSE RIVERA

```
   ALFG4  540*23 *            SENTENCE MONITORING          *     06-03-2020
PAGE 001         *           COMPUTATION DATA             *     14:35:34
                               AS OF 06-03-2020
```

REGNO..: 22416-055 NAME: RIVERA, JOSE


```
FBI NO...........: 562005FB8          DATE OF BIRTH: 04-08-1981  AGE:  39
ARS1.............: ALF/A-DES
UNIT.............: LYCOMING            QUARTERS.....: L01-241U
DETAINERS........: NO                  NOTIFICATIONS: NO
```

HOME DETENTION ELIGIBILITY DATE: 07-02-2022

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE: 01-02-2023 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION..........: NEW YORK, WESTERN DISTRICT
DOCKET NUMBER..................: 1:13CR00083-006
JUDGE..........................: SKRETNY
DATE SENTENCED/PROBATION IMPOSED: 04-05-2017
DATE COMMITTED.................: 05-01-2017
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00         $00.00          $00.00       $00.00
```

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391    21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:846,21:841(A)(1) AND 21:841(B)(1)(A) CONSPIRACY TO POSSESS
          WITH INTENT TO DISTRIBUTE, AND TO DISTRIBUTE,1 KILOGRAM OR
          MORE OF HEROIN

```
SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:  120 MONTHS
TERM OF SUPERVISION............:    5 YEARS
DATE OF OFFENSE................: 02-27-2013
```

G0002      MORE PAGES TO FOLLOW . . .

```
ALFG4  540*23 *            SENTENCE MONITORING          *      06-03-2020
PAGE 002 OF 002 *            COMPUTATION DATA            *      14:35:34
                            AS OF 06-03-2020

REGNO..: 22416-055 NAME: RIVERA, JOSE


------------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-14-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 06-16-2017 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 04-05-2017
TOTAL TERM IN EFFECT............:  120 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   10 YEARS
EARLIEST DATE OF OFFENSE........: 02-27-2013

JAIL CREDIT....................:     FROM DATE      THRU DATE
                                     04-10-2013    04-23-2013
                                     07-11-2014    04-04-2017

TOTAL PRIOR CREDIT TIME.........: 1013
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 540
TOTAL GCT EARNED................: 270
STATUTORY RELEASE DATE PROJECTED: 01-02-2023      TWO WITH OUT HALFWAY House.
TWO THIRDS DATE.................: 02-24-2021
EXPIRATION FULL TERM DATE.......: 06-25-2024
TIME SERVED....................:       5 YEARS     11 MONTHS      9 DAYS
PERCENTAGE OF FULL TERM SERVED..: 59.3
PERCENT OF STATUTORY TERM SERVED: 69.6

PROJECTED SATISFACTION DATE.....: 01-02-2023
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 02-14-20: UPD FOR FSA/GCT D/LLF
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

WHAT'S HAPPENING

AT

ALLENWOOD

(AND THE BOP FACILITIES)

A.     *COVID-19 is spreading through BOP at an exponential rate.*

The Court is familiar with the threat posed by COVID-19, particularly in the prison setting, where social distancing and hygiene recommended by the Centers for Disease Control are very difficult to achieve. Data shows that, not surprisingly, the virus is tearing through the BOP at a rate exponentially higher than it is spreading elsewhere in the United States. Indeed, at the time *PEHLNER* reportedly submitted his request for compassionate release with his Allenwood warden (4-9-20), BOP was reporting 377 inmates and staff were infected (not including those who had been infected but recovered), and 8 people dead. Today, BOP reports 1,948 are infected (not including those who have recovered), and 23 more people have perished, bringing the death count to 31.[1] The universe of those who have died from the virus in custody includes people under the age of 60, and people to whom courts had granted compassionate release but fell ill and died before the orders could be effectuated, and a 30-year old woman who had just given birth.[2]



Total BOP-Reported Positive Tests for COVID-19 Nationwide (Includes Staff and Inmates)

COVID-19 Rate of Infection for Various Populations

| Location | Cases | Population | Infection Rate as Percent of Population | Infections/ 1,000 People |
|---|---|---|---|---|
| BOP Population | 1,376[3] | 178,649[4] | 7.70 | 0.7702% |
| United States | 980,008[5] | 329,574,093[6] | 2.97 | 0.2974% |
| China | 83,912[7] | 1,394,015,977[8] | 0.06 | 0.0060% |
| | 199,414[9] | 62,402,659[10] | 3.20 | 0.3196% |

| | BOP has an infection rate X times higher |
|---|---|
| Compared to the United States | 2.590248 |
| Compared to China | 127.9563 |
| Compared to Italy | 2.410268 |

Moreover, there is ample reason to believe that the Bureau of Prisons' numbers probably understate the spread within its system overall, and that there very well could be people infected with the virus at FCI Allenwood Low now, notwithstanding the BOP report. First, BOP excludes data from private run prisons.[11] Second, BOP's website lists only "lab positive tests," omitting "suspected, presumed positive, or clinically confirmed."[12] Third, the BOP numbers, which show no positive cases at the complex in which Petitioner is housed, appear to exclude at least two staff members who have tested positive, according to news sources.[13] Finally, it is by now well-known that people infected with COVID-19 "may not show symptoms.[14] The only way to be sure how many people in a prison are positive for the virus is to test them all, as some state prison systems have begun to do (causing their numbers to skyrocket), but BOP has not engaged in widespread testing.[15]

B.   *Conditions at Petitioner facility are conducive to spreading the virus.*

Moreover, the inherent problem at every prison is that people come and go, and move about, and are packed in close quarters, sharing space and facilities. According to Petitioner, he and his fellow inmates at Allenwood Low have been locked down since April 1, like most of the rest of BOP, which will continue this lockdown through at least May 18.[16] But a lockdown is not a panacea. According to Petitioner, during

the "lockdown" in place at Allenwood, inmates are still released for 45 minutes every other day, and in that time, they share showers, furniture, phones, and computers. Neither hand-sanitizer bottles nor disinfectant wipes are made available to the inmates either inside or outside of their cells. Moreover, he is not locked down alone. He shares his room and bathroom facilities with another man, whose actions he cannot control.

In short, the risk to *Petitioner* is real, and it is present now. *See United States v. Harris*, Case No. No. 19-356, 2020 WL 1482342, at *1 (D.D.C. Mar. 26, 2020) (noting that, between the time the government counseled the court to "wait and see" if any positive COVID-19 cases were detected at the D.C. jail, "at least one person at the D.C. jail has tested positive for the virus.").

C.    *Petitioner 's medical conditions place him at particularly high risk for severe illness or death from COVID-19.*

Everyone incarcerated within BOP is at risk, but *Petitioner* is especially so.

He does not have permission to keep bleach or other disinfecting materials needed to regularly clean and disinfect every part of it to kill the virus, which can live for up to 72 hours on surfaces (not to mention that this I difficult for him to accomplish on his own).[18]

In addition, he is predisposed to get very sick if he contracts the virus, as he is diabetic, and suffers from, among other conditions, high blood pressure, and is 60 years old.[19] According to the Centers for Disease Control and Prevention (CDC), diabetes and severe obesity may put individuals at "high-risk for severe illness from COVID-19."[20] Indeed, a study of 5,000 hospitalized patients published on a website for the Journal of the American Medical Association showed that 57% had high blood pressure, 41% were obese, and over 1/3 had diabetes. And a group of University of Missouri and Harvard doctors recently reported that data from China showed that the "fatality rate" for diabetics was almost three times the overall fatality rate."[21]

Although the CDC highlights the risk to those over 65, the Intensive Care National Audit and Research Centre in London reports that 45.8% of those between the ages of 50-69 admitted to critical care died in critical care.[22]

While some may argue that any defendant (like *any* person) will still be at risk outside of prison, that argument misses the point. COVID-19 is extremely dangerous to *Petitioner* wherever it is contracted, but the ability to guard against it is greater at home, where *Petitioner* can truly quarantine, where he can clean his wheelchair properly with help, and where he can shower alone, and freely practice the other hygiene and cleaning recommendations of experts. None of that can happen at the prison, where he shares a room and bathroom facilities with another man, shares a common area, showers, phones and computer terminals with hundreds of men who could be infected without anyone knowing it, and has no access to his own cleaning supplies. Indeed, the CDC's website says: "People in correctional and detention facilities are at greater risk for illnesses, such as COVID-19 because of their close living arrangements with other people."[23] Or, as one district judge put it recently, in the context of granting a motion for compassionate release, prisons are "tinderboxes for infectious disease." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).

# SUPPORTIVE Footnotes

---

[1] BOP reports data on staff and inmates testing positive every afternoon, at www.bop.gov/coronavirus (last visited 4/29/20). The tables and charts that follow were created by an Assistant Federal Public Defender in New York, using data from www.bop.gov/coronavirus and www.cdc.gov as of April 27, 2020.

[2] BOP issues press releases regarding each death. *See* https://www.bop.gov/resources/press_releases.jsp (last visited 4/29/20). On April 1st, a district court in Northern Florida commuted a life sentence for a defendant named Andre Williams to time-served with 12-months home confinement, finding age and medical conditions created significant risk of "life threatening illness should he be exposed to COVID-19 while incarcerated." *U.S. v. Williams*, No. 04-cr-95, at *7 (N.D. Fla. Apr. 1, 2020) (ECF No. 91). Before the order granting release was filed, Mr. Williams caught coronavirus in FMC Butner. He died April 12th. *See* BOP, Inmate Locator website, *available at* https://bit.ly/2XDfgZe).

[3] Includes the number of both BOP inmates and staff who have tested positive for COVID-19. Numbers obtained from www.bop.gov/coronavirus on a daily basis.

[4] Includes the number of federal inmates in BOP-managed institutions and the BOP staff complement. Numbers obtained from www.bop.gov/coronavirus on a daily basis.

[5] Numbers obtained on 4/27/2020 at 3:58pm from https://coronavirus.jhu.edu/map.html.

[6] Numbers obtained on 4/27/2020 at 3:57pm from https://www.census.gov/popclock/.

[7] Numbers obtained on 4/27/2020 at 3:58pm from https://coronavirus.jhu.edu/map.html.

[8] Numbers obtained on 4/27/2020 at 3:57pm from https://www.census.gov/popclock/.

[9] Numbers obtained on 4/27/2020 at 3:58pm from https://coronavirus.jhu.edu/map.html.

[10] Numbers obtained on 4/27/2020 at 3:57pm from https://www.census.gov/popclock/.

[11] Dan Kane, "A second federal prison in NC has coronavirus cases, and U.S. officials aren't tracking it," *The News & Observer* (Apr. 19, 2020), *available at* (reporting positives at private prison, and that BOP spokeswoman confirmed that BOP site does not report positives at privately run prisons), *available at* https://www.newsobserver.com/news/local /article242125516 .html (last visited Apr. 21, 2020).

[12] April 10, 2020 Press Release, "Rep. Bass & Nadler Demand Answers, Public Briefings from DOJ on Handling COVID-19 in Federal Prisons & CARES Act Implementation as Infections and Deaths Rise in the System," (Apr. 10, 2020), *available at* https://bass.house.gov/media-center/press-releases/rep-bass-nadler-dem and-answers -public-briefings-doj-handling-covid-19 (last visited Apr. 13, 2020).

[13] According to local news reports citing the president of the union representing corrections officers at Allenwood, a resigning staff-member tested positive after his last day, which was March 25, and another staff member was confirmed positive sometime in early April 4. Marcia Moore, "UPDATE Allenwood prison staffer tests positive for COVID-19; limited contacted with staff, prisoners," *The Daily Item* (Apr. 10, 2020) (("Hart did not know specifics, including when the unidentified corrections officer tested positive, whether he was hospitalized or what prison he will be working at next."), *available at* https://www.dailyitem.com/coronavirus/update-allenwood-prison-staffer-tests-positive-for-covid-19-limited-contacted-with-staff-prisoners/article 29b79008-7a93-11ea-91da-9ff36b66bc50.html (last visited 4/27/20); Marcia Moore, "Allenwood prison worker tests positive for COVID-19," *The Daily Item* (Apr. 13, 2020) ("Hart, the president of the union representing corrections officers at U.S. Penitentiary at Allenwood, a maximum-security prison in the same complex where one officer was diagnosed with COVID-19 in March, said staff was notified of the second confirmed diagnosis on Friday."), *available at* https://www.dailyitem.com/ news/snyder county/allenwood-prison-worker-tests-positive-for-covid-19/article 4c7c4484-b39b-5b59-9429-0d4fe2797f71.html (last visited 4/27/2020).

[14] Apoorva Mandavilli, "Infected but Feeling Fine: The Unwitting Coronavirus Spreaders," *New York Times* (March 31, 2020), *available at* https://www.nytimes.com 2020/03/31/health/coronavirus-asymptomatic-transmission.html (last visited Apr. 1, 2020; *see also* CDC, "How Coronavirus Spreads" webpage, *available at* https://www. cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.  html?CDC AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2  Fpre pare%2Ftransmission.html (last visited Apr. 1, 2020).

[15] *See* C. Aspinwall, J. Neff, "These Prisons Are Doing Mass Testing For COVID-19—And Finding Mass Infections," *The Marshall Project* (Apr. 24, 2020), *available at* https://www.themarshallproject.org/2020/04/24/these-prisons-are-doing-mass-testing-for-covid-19-and-finding-mass-infections ("Only a handful of states have taken this expansive testing approach so far—but it seems responsible for a spike in reported coronavirus cases behind bars.") (last visited 4/27/20); B. Chappell, "73% of Inmates at an Ohio Prison Test Positive for Coronoavirus," National Public Radio (Apr. 20, 2020), available at https://www.npr.org/sections/coronavirus-live-updates/2020/04/20/838943211/73-of-inmates-at-an-ohio-prison-test-positive-for-coronavirus (last visited 4/27/20). BOP has recently announced expanded testing, but is deploying it only at "institutions with known COVID-19 cases." *See* BOP website, "BOP Expands COVID-19 Testing," (Apr. 24, 2020) at https://www.bop.gov /resources/news/20200424 expanded testing.jsp (last visited 4/27/20).

[16] COVID-19 Action Plan: Phase 5 (March 31, 2020), https://tinyurl.com/ rb9umrx (last visited Apr. 13, 2020); COVID-19 Action Plan: Phase 6 (Apr. 14, 2020), https://www.bop.gov/resources/news/pdfs/20200414 press release action       plan 6.pdf (last visited Apr. 21, 2020).

Technology Users Attention: Precautions for COVID-19, at https://pva.org/covid-19/ (last visited Apr. 2, 2020); CDC, "People with Disabilities," website at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited 4/27/20) (recommending regular disinfecting of wheelchairs); *see also* Numotion.com, "Coronavirus: What to do if you're in a wheelchair," at https://www.numotion.com/blog/march-2020/coronavirus-what-to-do-if-you-re-in-a-wheelchair (same, recommending disinfection of all parts of a wheelchair, not just wheels, with bleach) (last visited 4/27/20).

[19] Dkt. No. 231 at 3; Presentence Investigation Report (PSR) ¶¶ 60, 68-72.

[20] *See* CDC, "Groups at Higher Risk for Severe Illness," *available at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions .html (last visited 4/27/20).

[21] Michael A. Hill, Christos Mantzoros, and James R. Sowers, "Commentary: COVID-19 in patients with diabetes," Metabolism (Mar. 24, 2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7102643/ (last visited Apr. 17, 2020) ("Very recently a summary report from the Chinese Center for Disease Control of 72,314 cases across the country showed an overall fatality rate of 2.3% but this was increased to 10.5% in people with cardiovascular disease and 7.3 and 6%, respectively for people having diabetes or hypertension.").

[22] ICNARC report on COVID-19 in critical care, ICNARC at 14 (Apr. 4, 2020), *available at* https://www.icnarc.org/Our-Audit/Audits/Cmp/Reports (last visited 4/29/20).

The World Health Organization (WHO) identifies individuals at highest risk to include those over 60 years of age and those with cardiovascular disease, diabetes, chronic respiratory disease, and cancer. *See* https://www.who.int/docs/default-source /coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf?sfvrsn=1ba62e57 10; see also https://www.who.int/newsroom/q-a-detail/q-a-coronaviruses. The WHO further states that the risk of severe disease increases with age starting from around 40 years.

[23] *See* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-deten tion/faq.html (last visited Apr. 13, 2020). Moreover, locking inmates down is not a solution. Not only is lockdown a highly imperfect preventative measure as inmates are still regularly released to common areas, prolonged lockdown is more punitive than what the Court envisioned for *Petitioner* when the Court imposed its sentence.



7019 2280 0000 7074 4654

U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
JUN 10, 20
AMOUNT
$0.00
R2305K138972-08

14202
1000
UNITED STATES
POSTAL SERVICE

USDC - WDNY
JUN 15 2020
BUFFALO

CLERK OF COURT;
ROBERT H. JACKSON U.S. CO
U.S. DIST COURT/WESTERN DIST
BUFFALO, N.Y. 14202

PCI ALLENWOOD LOW
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
WHITE DEER, P.A. 17887