UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOSE RIVERA,

Defendant.

**DECISION AND ORDER**
13-CR-83S (6)

## I. INTRODUCTION

Presently before this Court is Defendant Jose Rivera's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Rivera's motion is denied.

## II. BACKGROUND

On December 21, 2016, Rivera pleaded guilty to conspiring to possess with intent to distribute, and to distribute, 1 kilogram or more of heroin, in violation of 21 U.S.C. § 846. (Docket Nos. 456, 460.) Several months later, on April 5, 2017, this Court sentenced Rivera to 120 months' imprisonment, 5 years' supervised release, a $100 special assessment, and no fine, fees or costs, which was consistent with the sentencing provision in Rivera's plea agreement that called for imposition of an agreed-upon 120-month sentence pursuant to Rule 11 (c)(1)(C) of the Federal Rules of Criminal Procedure. (Docket Nos. 456, 533, 540.) Rivera is presently serving his sentence at FCI Allenwood Low, with a release date of January 2, 2023.[1]

On June 15, 2020, Rivera filed a pro se motion for compassionate release under

---

[1] See https://www.bop.gov/inmateloc/ (last visited June 30, 2020).

1

18 U.S.C. § 3582 (c)(1)(A)(i) or for a reduction in sentence to time served to allow him to leave FCI Allenwood Low and begin serving the supervised release portion of his sentence, to include a period of home confinement, if deemed necessary.  (Docket No. 672.)  He contends that such relief is warranted because he is at heightened risk to develop COVID-19 while incarcerated due to his medical conditions.

Thereafter, this Court appointed the Federal Public Defender's Office as counsel to assist Rivera with his motion.  (Docket No. 676.)  Counsel supplemented Rivera's motion and filed a reply brief on his behalf.  (Docket Nos. 675, 680.)  The government opposes the relief sought.  (Docket No. 679.)

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion.  See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018).  The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions.  See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

>that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of

imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons"

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf.  28 C.F.R. § 571.61 (a).  Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director.  Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel.  Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

examples. The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."[4] Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited June 17, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction. See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13,

applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

**B.    Rivera's Motion for Sentence Reduction**

Rivera has served approximately 76 months of his 120-month sentence. He is 39 years old and has multiple medical conditions, including Type II diabetes, high blood pressure, and high cholesterol, which he claims makes him highly susceptible to COVID-19. Rivera therefore requests that this Court reduce his sentence to time served or permit him to serve the remainder of his sentence in home confinement. If granted, Rivera plans to live with his wife and two children in Niagara Falls, N.Y., and if permitted, to work for a martial arts studio. (Declaration of Timothy P. Murphy, Esq., Docket No. 680, ¶ 11.) The

---

including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

6

government asks that Rivera's motion be denied.

### 1. Exhaustion of Administrative Rights

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory exhaustion requirement is mandatory and cannot be excused. See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122-FPG, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Rivera submitted his request for compassionate release to the warden of FCI Allenwood Low on May 22, 2020. (Docket No. 679-1.) The warden denied his request on June 8, 2020. (Docket No. 679-2.) Thirty days having lapsed since May 22, 2020, this Court finds that Rivera has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.

### 2. Extraordinary and Compelling Reasons for Sentence Reduction

Rivera is a 39-year-old man who suffers from Type II diabetes, high blood pressure, and high cholesterol, all of which he claims makes him highly susceptible to

contracting and dying from COVID-19. The United States Probation Office confirmed Rivera's medical conditions at the time of sentencing. (Presentence Report, Docket No. 541, ¶ 79.) Moreover, the government has reviewed Rivera's medical records and agrees that Rivera suffers from chronic Type II diabetes. (Memorandum of Law, Docket No. 679, p. 7.) Even further, the government agrees that Rivera's condition is severe enough that it substantially diminishes his ability to provide self-care in a prison environment and is a condition from which he is not expected to recover, thus meeting the requirements for an "extraordinary and compelling reason" under U.S.S.G. § 1B1.13 comment n. 1 (A)(ii)(I). But while Rivera alleges some fluctuations in certain diabetes-related diagnostic testing, see Declaration of Timothy P. Murphy, Docket No. 675, ¶¶ 7, 8, he has made no showing that the Bureau of Prisons is unable to adequately treat his condition.

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Rivera argues that his medical conditions make him highly susceptible to contracting and dying from COVID-19. See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

COVID-19, of course, is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020. The Centers for Disease Control and Prevention ("CDC") has determined that individuals with certain underlying medical conditions, particularly if not well controlled,

are at high risk for severe illness from COVID-19.[5]  See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 20 Civ. 2518, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2000)).  The identified medical conditions include Rivera's Type II diabetes mellitus.[6]   Rivera is therefore correct that his medical condition puts him at increased risk of severe illness from COVID-19.

Some courts have found that inclusion in the high-risk category alone is enough to warrant a sentence reduction, see, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases), but this Court has not.  Rather, it has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme. See United States v. Stevens, 04-CR-222S, 2020 WL 2393306, at *6 (W.D.N.Y. May 12, 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to

---

[5] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#diabetes (last visited June 30, 2020).

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#diabetes (last visited June 30, 2020).

curtail the virus's spread"); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[7] This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced

---

[7] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited June 30, 2020).

overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours.[8]

These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population. And these measures appear to have proven effective at FCI Allenwood Low: as of June 26, 2020, there have been no reported inmate or staff cases. (Memorandum of Law, Docket No. 679, pp. 3, 7.)

Thus, although Rivera has demonstrated (and the government concedes) that he falls firmly in the high-risk group, he nonetheless alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that FCI Allenwood Low's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he falls ill. To the contrary, it appears that the BOP's efforts at FCI Allenwood Low are working. Consequently, this Court finds that Rivera fails to demonstrate an extraordinary and compelling reason for a sentence reduction under U.S.S.G. § 1B1.13 comment n. 1 (D) based on COVID-19. See Stevens, 2020 WL 2393306, at *6-7 (denying compassionate release to defendant in facility with no reported cases alleging only the general possibility of contracting COVID-19); Korn, 2020 WL 1808213, at *6-8 (denying compassionate release to defendant who failed to show inadequacy in Bureau of Prisons plan or ability to treat him); see also Gileno, 2020 WL 1307108, at *4; Eberhart, 2020 WL 1450745, at *2; Zywotko, 2020 WL 1492900, at *2; Gagne, 2020 WL 1640152, at *4.

---

[8] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 30, 2020).

### 3. Consideration of the § 3553 (a) Factors

Notwithstanding Rivera's serious medical condition, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction, and that a reduction would undermine Rivera's original sentence.  See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7.  The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553 (a).

Rivera was a member of the Loiza Boys gang, which was responsible for the distribution of large quantities of heroin and cocaine in Buffalo, N.Y.  (Presentence Report, ¶¶ 9, 23.)  Rivera himself was a high-level heroin customer and distributor who operated in multi-gram quantities.  (Id. ¶ 23.)  During a search of Rivera's residence in April 2013, law enforcement recovered $14,824 in cash, marijuana, glassine bags, and a ledger, all related to Rivera's drug activities.  (Id.)  In all, Rivera admitted that his relevant conduct included between three and ten kilograms of heroin.

For this serious criminal activity, Rivera agreed to the imposition of the 120-month sentence that he received.  That is a fair, just, and reasonable sentence which, in this Court's view, would be undermined by a reduction to time served.  Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future

crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id. Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, this Court finds that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2). This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

In addition to his significant drug-trafficking activities and gang affiliation, Rivera also possessed numerous weapons. When he was arrested in 2011 after a vehicle stop, Rivera was armed with a loaded Ruger SR9 9mm pistol and carrying $4,960 in cash. (Presentence Report, ¶ 22.) When he was arrested again two year later, a search of his residence yielded a magazine for the 9mm pistol he previously possessed, and a search of his car yielded an expandable baton, an ax, and a machete. (Id. ¶ 23.)

Thus, given the nature of Rivera's conviction, his gang affiliation, and his possession of multiple and varied weapons, this Court finds that he remains a danger to the community if released.

### IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release and a sentence reduction under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Rivera's motion will therefore be denied.

## V. ORDER

IT HEREBY IS ORDERED, that Rivera's Motion for Compassionate Release (Docket No. 672) is DENIED.

SO ORDERED.

Dated:      July 2, 2020
            Buffalo, New York

                                            <u>s/William M. Skretny</u>
                                            WILLIAM M. SKRETNY
                                            United States District Judge

14